## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **DARLENE MALEY,** | : |
| | : |
| *Plaintiff,* | : |
| | : **Case No.:**    22-792 |
| **v.** | : |
| | : |
| | : |
| **CARMICHAELS-CUMBERLAND JOINT** | : |
| **SEWER AUTHORITY** *and* **CHARLES** | : **COMPLAINT IN CIVIL ACTION** |
| **NESTER,** *in his official capacity,* | : |
| | : |
| *Defendants.* | : |

Filed on Behalf of Plaintiff:
Darlene Maley

Counsel of Record for this Party:
**J.P. WARD & ASSOCIATES, LLC**

Joshua P. Ward
Pa. I.D. No. 320347

The Rubicon Building
201 South Highland Avenue
Suite 201
Pittsburgh, PA 15206

Telephone:          (412) 545-3015
Fax No.:              (412) 540-3399
E-mail:               jward@jpward.com

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **DARLENE MALEY,** | : |
| | : |
| *Plaintiff,* | : |
| | :   **Case No.:** |
| **v.** | : |
| | : |
| | : |
| **CARMICHAELS-CUMBERLAND JOINT** | : |
| **SEWER AUTHORITY** *and* **CHARLES** | : |
| **NESTER,** *in his official capacity,* | : |
| | : |
| *Defendants.* | : |

## COMPLAINT IN CIVIL ACTION

AND NOW, comes Plaintiff, Darlene Maley, by and through the undersigned counsel, J.P Ward & Associates, LLC and, specifically, Joshua P. Ward, Esquire, who files the within Complaint in Civil Action against Defendant, Carmichaels-Cumberland Joint Sewer Authority, of which the following is a statement:

## PARTIES

1.     Plaintiff, Darlene Maley (hereinafter "Plaintiff" or "Ms. Maley"), is an adult individual who currently resides at 141 Pine Street, Jefferson, PA 15344.

2.     Defendant, Carmichaels-Cumberland Joint Sewer Authority, (hereinafter "Defendant"), is a multi-purpose municipal authority located at 103 Municipal Road, P.O. Box 304, Carmichaels, PA 15320.

3.     Defendant, Charles Nester (hereinafter "Mr. Nester"), was Superintendent of Defendant at the time of the incidents set forth herein.

## JURISDICTION AND VENUE

4.      Jurisdiction is proper as Plaintiff brings this lawsuit under the Pennsylvania Whistleblower Law, 43 P.S. § 1421, *et seq*., the Wage Payment and Collection Law, 43 P.S. § 260, *et seq*., Worker's Compensation Act, 77 P.S. § 1, *et. seq*., and 42 U.S.C. § 1983 and the First Amendment of the United States Constitution.

5.      This Court has supplemental jurisdiction over Ms. Maley's state law claims pursuant to 28 U.S.C. § 1367(a).

6.      Ms. Maley is a resident and citizen of Pennsylvania, a substantial part of the events or omissions giving rise to the claims occurred in Western Pennsylvania, and, therefore, this action is within the jurisdiction of the United States District Court for the Western District of Pennsylvania and the venue is proper pursuant to 28 U.S.C. § 1391(b).

## PROCEDURAL HISTORY AND FACTUAL ALLEGATIONS

7.      On or about November 1, 2021, Ms. Maley initiated her employment with Defendant as an Office Clerk.

8.      Ms. Maley is an individual who was qualified for her position.

9.      Ms. Maley's supervisor and manager was Gayle Lewis (hereinafter "Ms. Lewis").

10.     On November 10, 2021, a heating, ventilation, and air conditioning (hereinafter "HVAC") worker was working in Defendant's office.

11.     In conversation, the HVAC worker informed Ms. Maley that the office had not been cleaned for nine years.

12.     The HVAC worker sprayed several cans of a noxious substance marketed as "Nu-Blast" which is used as a coil cleaner.

13.     Nu-Blast is a product of Nu-Calgon. The directions state that Nu-Blast should be sprayed in a well-ventilated area as this product has "a fragrance that will be objectionable to some people." The hazard statement says this product causes skin irritation, may cause an allergic skin reaction, causes serious eye irritation, drowsiness or dizziness, suspected of causing genetic defects, and may cause cancer. The Material Safety Data Sheet (hereinafter "MSDS"), for Nu-Blast is included with this Complaint as "Exhibit 1".

14.     The area where Ms. Maley worked was cramped with only two desks, a counter and poor ventilation.

15.     Ms. Maley was working at her desk when the fumes from the spray overcame her, causing her to have burning eyes, burning skin, trouble breathing, nausea, headache, and feeling shaky and lethargic.

16.     Ms. Maley requested Ms. Lewis to come out of her work area and help her because the fumes were making her feel very sick.

17.     Ms. Lewis told Ms. Maley she was on a call and shut the door in her face.

18.     Following this interaction with Ms. Lewis, Ms. Maley was looking for the HVAC worker to tell him to stop spraying chemicals.

19.     Shortly thereafter, the superintendent Charlie Nester (hereinafter "Mr. Nester") arrived at the office and Ms. Maley asked him to come inside and help as the smell of chemicals was overwhelming. Mr. Nester came in about five minutes later and said, "Oh yeah, it's bad," referring to the smell of chemicals.

20.     The HVAC worker then re-entered and said, "Oh, it's not dangerous, just a citrus cleaner." Ms. Maley asked the HVAC worker if she could read the can because she was feeling very sick and he provided her with a can.

21.     The can had many warnings on it, including the word "harmful."

22.     Mr. Nester instructed Ms. Maley to open doors and windows and the HVAC worker tried to wave his hand by the vent to air out the office but it still smelled extremely bad.

23.     Ms. Lewis finally came into the office area and Ms. Maley told her that she cannot work in the office in its current condition. Ms. Maley said she would use a "float day or whatever you want me to use" because she had to leave.

24.     Ms. Maley drove home and had developed a concerning rash on her face and neck.

25.     Ms. Maley's first instinct was to call Ms. Lewis to inform her about the rash on her face and neck.  Indeed, Ms. Maley was concerned and wanted to know if others were having symptoms as well, and asked about whether OSHA should be called.

26.     She called Ms. Lewis when she got home and asked if they need to file a formal complaint and document the incident. Ms. Lewis asked if Ms. Maley meant to file a complaint with her and Ms. Maley said that she meant to file a complaint with the Occupational Safety and Health Administration (hereinafter "OSHA").

27.     Ms. Maley told Ms. Lewis she had a facial rash and her eyes were burning and she could still smell the chemicals in her nostrils and feeling in her lungs. Ms. Lewis said maybe it was her nerves and that she would not be filing an OSHA complaint but she would mark in Ms. Maley's file that she could not work in those conditions and that she took the HVAC worker's can.

28.     Ms. Maley entered her home and immediately removed her clothes and shoes.  She secured them in a trash bag and placed them on the porch.

29.     Ms. Maley then took a shower.

30.     Immediately thereafter, Ms. Maley called her dermatologist.

31.     After speaking with Ms. Lewis, and calling her dermatologist, Ms. Maley filed a complaint with OSHA over the phone.

32.     The next day, November 11, Ms. Maley made a called The Poison Control Center and advised her to go to the emergency room if symptoms persisted.

33.     On November 11, Ms. Maley called Dr. Janine Rihmland who consulted with her over the phone and ordered a steroid to assist with breathing.

34.     On Monday, November 15, 2021, Ms. Maley presented at Washington Ear Nose and Throat for an evaluation and doctors note.

35.     On December 1, 2021, Ms. Maley returned to work and presented multiple doctors' notes to establish that she had a legitimate concern and excused absence.

36.     Ms. Lewis stated that the doctors' notes were "not good enough" and she expressed doubt about Ms. Maley's intentions.

37.     Ms. Maley's first paycheck was to be issued on November 12, 2021 but she did not receive it because she was out of work due to her illness. She asked Ms. Lewis to mail her paycheck and Ms. Lewis agreed.

38.     On or about November 19, 2021, Defendant placed Ms. Maley on probation and requested that she return her keys and remotes back.

39.     On or about November 29, Defendant sent Ms. Maley a letter stating that they would be hiring someone temporarily for her position.

40.     Further, the letter stated that Defendant would not give Ms. Maley her paycheck until she made arrangements to return her keys and remotes.

41.     Upon her return to work on December 1, 2021, Ms. Maley provided Defendant with documentation stating that she was released by her doctor to return to work following her illness, as well as her keys and remotes.

42.     Defendant also received documentation of Ms. Maley's workers' compensation claim arising out of the events on November 10, 2021.

43.     Ms. Maley asked Ms. Lewis for her paycheck, to which she responded that she is the manager and Ms. Maley is not going to talk to her like that.

44.     Ms. Maley said that she is being polite, and Ms. Lewis told her, "You are fake and all you want is a lawsuit." Ms. Lewis became visibly upset by this exchange.

45.     Mr. Nester was also present and Ms. Maley asked him for her paycheck. He asked Ms. Lewis if she had returned her keys and remotes, and then asked, "Why are you in a hurry for your paycheck? Are you going somewhere?" Ms. Maley said it was owed to her weeks ago.

46.     Ms. Lewis told Mr. Nester that the doctor's notes were not good enough because the first note was dated for the Monday following the November 10th incident. Ms. Maley said this was the first appointment available and her doctor was closed on Fridays.

47.     Following her return date, Ms. Maley was harassed and treated rudely by Mr. Nester and Ms. Lewis.

48.      Defendant was not providing Ms. Maley with any work and she sat around much of the day. Mr. Nester told her he would provide her with reports to do but never provided them and told Ms. Maley to go home for the day.

49.     The next day, Ms. Maley noticed Defendant moved a video camera from the corner of the office to directly above her desk and facing her.

50.     Mr. Nester told her that they moved the camera over her desk because Ms. Maley counts money at her desk. This was patently false as Ms. Maley did not count money at her desk.

51.     Mr. Nester gave Ms. Maley documents related to her workers' compensation claim.

52.     Ms. Maley asked if she could take the documents to have an attorney review them since there might be an appeal. Mr. Nester told her they were like car insurance papers and not important, and Ms. Lewis asked her if she was refusing to sign.

53.     For the rest of the day, Ms. Maley was treated rudely and harshly by Mr. Nester and Ms. Lewis, with Ms. Lewis at one point putting a finger in her face saying, "I know what your agenda is, you want a lawsuit against us."

54.     Ms. Maley left Defendant that day feeling sick with chest pains and in tears, because of the retaliation and intimidation she was facing in the workplace.

55.     Defendant terminated Ms. Maley the following Monday, December 6, 2021.

### COUNT I
### RETALIATION AND TERMINATION IN VIOLATION OF THE
### PENNSYLVANIA WHISTLEBLOWER LAW

### (Plaintiff vs. Defendant)

56.     Ms. Maley incorporates the allegations contained in the paragraphs, above, as if fully set forth at length herein.

57.     The Pennsylvania Whistleblower Law (hereinafter "PWL") is "chiefly a remedial measure intended to enhance openness in government and compel the government's compliance with the law by protecting those who inform authorities of wrongdoing." *Saltzman v. Thomas Jefferson Univ. Hosps., Inc.*, 166 A.3d 465, 475 (Pa. Super. 2017).

58.     Under the PWL, 43 Pa. Stat. Ann. §§1421-1428, a "whistleblower" is "a person who witnesses or has evidence of wrongdoing or waste while employed and who makes a good

faith report of the wrongdoing or waste, verbally or in writing, to one of the person's superiors, to an agent of the employer or to an appropriate authority." *Bailets v. Pa. Tpk. Comm'n*, 123 A.3d 300, 307 (Pa. 2015) (citing 43 Pa. Stat. Ann §1422).

59. Under 43 P.S. §1423(b), "the reported wrongdoing must either be that of the employer or a violation of a law or code of conduct that the employer is charged to enforce for the good of the public." *Sea v. Seif*, 831 A.2d 1288, 1292 (Pa. Commw. Ct. 2003).

60. Under the PWL, an employer is "a public body" because it "receives money from a public body to perform work or provide services relative to the performance of work for or the provision of services to a public body: an individual, a partnership, an association, a corporation for profit, or a corporation not for profit." 43 P.S. §1422.

61. Upon information and belief, Defendant receives public funds, thereby making it a "public body" as defined by the PWL.

62. Ms. Maley was an employee of Defendant as defined by the PWL.

63. The PWL defines an appropriate authority as "a federal, state, or local government body, agency, or organization having jurisdiction over criminal law enforcement, regulatory violations, professional conduct or ethics, or waste; or a member, officer, agent, representative or supervisory employee of the body, agency, or organization." 43 P.S. §1422.

64. The violations of health and safety violations, including but not limited to, hazardous chemicals being negligently sprayed in an occupied and poorly ventilated work area without information or warning, were considered "wrongdoing" as defined by PWL as the violations were not of a "merely technical or minimal nature."

### a. Plaintiff's Termination was Contra to State and Federal Public Policy

65.     Pennsylvania courts define public policy "by reference to the laws and legal precedents and not from supposed public interest." *Id*. at 288.

66.     Under Pennsylvania law, it is well-established that the federal OSH Act is incorporated into the PWCRA, 35 P.S. § 7319 and that the two are to be read in conjunction with one another. See *Beck v. CNO Fin. Crp., Inc.*, 2018 WL 2984854 (Pa. E.D. Jun. 14, 2018); *Dille v. Day & Zimmerman NPA*, 2015 WL 3884889 (Pa. E.D. Jun. 24, 2015); *Lambert v. Envtl. Restoration Group Inc.*, 2008 WL 723328 (Pa. W.D. May 14, 2008); *Romig v. Northampton County Dep't of Corr.*, 2008 WL 818798 (Pa. E.D. Mar. 21, 2008); *Helfrich v. Lehigh Valley Hosp.*, 2005 WL 670299 (Pa. E.D. Mar. 18, 2005); *Fassl v. Our Lady of Perpetual Help Roman Catholic Church*, 2005 WL 2455253 (E.D. Pa. Oct. 5, 2005); *Wetherhold v. Radio Shack Corp.*, 339 F. Supp. 2d 670 (Pa. E.D. 2004).

67.     PWCRA § 7319(b) states:

> Construction with Federal law. – This act is to be read in conjunction with any provision of Federal law providing for the identification, labeling or providing of information concerning hazardous substances and is intended to supplement such Federal regulation in the interests of protecting the health and safety of citizens of the Commonwealth.

35 P.S. § 7319(b).

68.     Therefore, the policies expressed in the OSH Act are considered the public policies of the Commonweath of Pennsylvania, which gives rise to a claim of wrongful termination when an employer retaliates against an employee for voicing complaints about real or perceived OSHA violations. The court in *Wetherhold* found that PWCRA §7313 and OSH Act, 29 U.S.C.A. §660 were sufficiently analogous for 29 U.S.C.A. §660 to be adopted as public policy under Pennsylvania law. *Id*. at 681.

69.     Ms. Maley experienced an intense reaction as a result of the Nu-Blast sprayed in her work area, including burning eyes, burning and irritated skin in the form of a facial rash, trouble breathing, nausea, headache, and feeling shaky, dizzy, and lethargic.

70.     Ms. Maley reported the incident to Defendant and her supervisors.

71.     Under the PWL, an employer may not "discharge, threaten, or otherwise discriminate or retaliate against an employee regarding the employee's compensation, terms, conditions, location, privileges or employment because the employee" made a "good faith report or is about to report" an instance of waste or wrongdoing. 43 P.S. §1423.

72.     Following Ms. Maley's report of wrongdoing to the appropriate authorities, she was subjected to adverse employment actions, including but not limited to, harassment, retaliation, and termination with no prior warning and pretextual reasoning.

73.     As set forth hereinabove, after Ms. Maley returned to work on December 1, 2021, Defendant harassed and retaliated against Ms. Maley for her complaints by not providing her with work, installing a video camera over her desk, withholding her paycheck, pressuring her to sign Worker's Compensation documents without consulting an attorney, accusing her of seeking a frivolous lawsuit, and verbally confronting Ms. Maley in an aggressive and angry manner.

74.     Defendant pretextually terminated Ms. Maley without adequate justification on December 6, 2021.

75.     Defendant's actions were knowing, intentional, and done in reckless or conscious indifference to the rights of Plaintiff.

76.     As a direct and proximate result of the aforementioned conduct, Ms. Maley suffered actual damages, including, but not limited to, lost wages, benefits, loss of professional

opportunities, harm to reputation, humiliation, mental anguish and emotional distress all in the past, present, and future.

WHEREFORE, Ms. Maley hereby requests this Honorable Court enter judgment in her favor and against Defendant, including an award for back pay, front pay, compensatory damages, costs and attorney fees, in excess of arbitration limits, in addition to such other relief as deemed just and proper.

## COUNT II

**Common Law Wrongful Termination - Violation of a Clear Mandate of Public Policy by Failure to Provide Safe Work Environment in Violation of the Federal OSH Act as Adopted by Pennsylvania Law Under the Pennsylvania Worker and Community Right-to-Know Act, 35 P.S. § 7319.**

77.     Ms. Maley incorporates the allegations contained in the paragraphs, above, as if fully set forth at length herein.

78.     In the Commonwealth of Pennsylvania, "as a general rule, there is no common law cause of action against an employer for termination of an at-will employment relationship." *Mikhail v. Pennsylvania Org. for Women in Early Recovery*, 63 A.3d 313, 316 (Pa. Super. 2013).

79.     However, an at-will employee "will be entitled to bring a cause of action for a termination of that relationship . . . where the termination implicates a clear mandate of public policy in the Commonwealth of Pennsylvania." *McLaughlin v. Gastrointestinal Specialists, Inc.*, 750 A.2d 283, 287 (Pa. 2000).

80.     Pennsylvania courts define public policy "by reference to the laws and legal precedents and not from supposed public interest." Id. at 288.

81.     Under Pennsylvania law, it is well-established that the federal OSH Act is incorporated into the PWCRA, 35 P.S. § 7319 and that the two are to be read in conjunction with

one another. See *Beck v. CNO Fin. Crp., Inc.*, 2018 WL 2984854 (Pa. E.D. Jun. 14, 2018); *Dille v. Day & Zimmerman NPA*, 2015 WL 3884889 (Pa. E.D. Jun. 24, 2015); *Lambert v. Envtl. Restoration Group Inc.*, 2008 WL 723328 (Pa. W.D. May 14, 2008); *Romig v. Northampton County Dep't of Corr.*, 2008 WL 818798 (Pa. E.D. Mar. 21, 2008); *Helfrich v. Lehigh Valley Hosp.*, 2005 WL 670299 (Pa. E.D. Mar. 18, 2005); *Fassl v. Our Lady of Perpetual Help Roman Catholic Church*, 2005 WL 2455253 (E.D. Pa. Oct. 5, 2005); *Wetherhold v. Radio Shack Corp.*, 339 F. Supp. 2d 670 (Pa. E.D. 2004).

82. PWCRA § 7319(b) states:

> Construction with Federal law. – This act is to be read in conjunction with any provision of Federal law providing for the identification, labeling or providing of information concerning hazardous substances and is intended to supplement such Federal regulation in the interests of protecting the health and safety of citizens of the Commonwealth.

35 P.S. § 7319(b).

83. When read together, the two are sufficient "to overcome a strong presumption in favor of the at-will employment be an objective reading of PWCRA §7319(b) supports that a Commonwealth health and safety law reflects the same public policy expressed by the federal government under OSHA.'" *Wetherhold v. Radio Shack Corp.*, 339 F. Supp. 2d 670, 681 (Pa. E.D. 2004).

84. Therefore, the policies expressed in the OSH Act are considered the public policies of the Commonwealth of Pennsylvania, which gives rise to a claim of wrongful termination when an employer retaliates against an employee for voicing complaints about real or perceived OSHA violations. The court in *Wetherhold* found that PWCRA §7313 and OSH Act, 29 U.S.C.A. §660 were sufficiently analogous for 29 U.S.C.A. §660 to be adopted as public policy under Pennsylvania law. *Id*. at 681.

13

85.     Defendant is subject to the OSH Act's General Duty Clause and is required to provide a safe environment to its employees. Under the General Duty Clause, Section 5(a)(1) of the Occupational Safety and Health Act of 1970, employers are required to provide their employees with a place of employment that is "free from recognized hazards that are causing or are likely to cause death or serious physical harm." The courts have interpreted OSHA's general duty clause to mean that an employer has a legal obligation to provide a workplace free of conditions or activities that either the employer or industry recognizes as hazardous and that cause, or are likely to cause, death or serious physical harm to employees when there is a feasible method to abate the hazard.

86.     Nu-Blast is defined as a hazardous chemical and Defendant is required as an employer "to provide information to their employees about the hazardous chemicals to which they are exposed, by means of a hazard communication program, labels and other forms of warning, safety data sheets, and information and training." 29 C.F.R. 1910.1200 *et seq.*

87.     Defendant did not provide any form of warning or information to Ms. Maley about the hazardous chemical that she would be exposed to during the spraying of Nu-Blast in her work area.

88.     Defendant was notified by Ms. Maley that the hazardous chemical was sprayed in her vicinity and caused her to have a physical reaction.

89.     Defendant was in violation of the public policy of the Commonwealth of when it retaliated against and terminated Ms. Maley for making such reports.

90.     As set forth hereinabove, the Defendant's actions were intentional, knowing, wanton, willful, and so outrageous as to shock the conscience.

91.     As a direct and proximate cause of the aforementioned conduct, Plaintiff suffered actual damages, including, but not limited to, wage loss, loss of income, and emotional distress damages, all in the past, present and future.

WHEREFORE, Plaintiff hereby requests this Honorable Court consider the above and grant relief in her favor and against Defendant, including an award of back pay, front pay, compensatory damages, punitive damages, costs and attorney's fees.


### COUNT III
### COMMON LAW WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY IN VIOLATION OF THE PENNSYLVANIA WORKER'S COMPENSATION ACT

92.     Ms. Maley incorporates the allegations in the paragraphs, above, as if fully set forth at length herein.

93.     "[A]s a general rule, there is no common law cause of action against an employer for termination of an at-will employment relationship." *Mikhail v. Pennsylvania Org. for Women in Early Recovery*, 63 A.3d 313, 316 (Pa. Super. 2013).

94.     However, under a narrow exception to this rule, an employee may bring a cause of action for termination if such termination would violate "a clear mandate of public policy" of the Commonwealth. *Reyes v. Termac Corp.*, CIV.A. 11-5124, 2012 WL 3517372, at *2 (E.D. Pa. Aug. 15, 2012) (citing *McLaughlin v. Gastrointestinal Specialists, Inc.*, 750 A.2d 283, 286 (Pa. 2000)).

95.     "To state a cause of action under the public policy exception to the at-will employment doctrine, a plaintiff must point to a 'clear public policy articulated in the constitution, in legislation, an administrative regulation or a judicial decision.'" *Tanay v. Encore Healthcare, LLC*, 810 F.Supp.2d 734, 737 (E.D.Pa.2011) (quoting *Hunger v. Grand Cent. Sanitation*, 447 Pa.Super. 575, 670 A.2d 173, 175 (Pa. Super.1996)).

96.     This public policy exception applies and permits a cause of action for wrongful discharge where the employer discharges an employee for refusing to commit a crime, where the employer discharges an employee for complying with a statutorily imposed duty, or where the employer is specifically prohibited from discharging the employee by statute. *Deal v. Children's Hosp. of Philadelphia*, 223 A.3d 705, 712 (Pa. Super. 2019) (emphasis added) (citing *Greco*, 199 A.3d at 436; Stewart, 114 A.3d at 428).

97.     After *Geary*, public policy exceptions to the at-will employment doctrine have been adopted in very limited circumstances. Courts of this Commonwealth have permitted the following wrongful termination claims when public policy concerns have been implicated: *Kroen v. Bedway Security Agency*, 430 Pa.Super. 83, 633 A.2d 628 (1993) (holding that an employee was discharged for refusing to submit to a polygraph test); *Highhouse v. Avery Transportation*, 443 Pa.Super. 120, 660 A.2d 1374 (1995) (concluding that an employee was wrongfully discharged for filing of an UC claim); *Raykovitz v. K Mart Corp.*, 445 Pa.Super. 378, 665 A.2d 833 (1995) (same); and the case directly implicated herein *Shick v. Shirey*, 552 Pa. 590, 716 A.2d 1231 (1998) (holding that an employee was wrongfully terminated for filing a workers' compensation claim). *Rothrock v. Rothrock Motor Sales, Inc.*, 883 A.2d 511, 515 (Pa. 2005).

98.     Accordingly, a cause of action exists under Pennsylvania law for wrongful discharge of an employee who files a claim for workers' compensation benefits. *Shick v. Shirey*, 716 A.2d 1231, 1238 (Pa. 1998).

99.     As of June 2, 1915, the General Assembly of the Commonwealth of Pennsylvania has codified into law the standards set forth by the Workers' Compensation Act.

100.    On November 1, 2021, Ms. Maley was injured in the workplace when she was exposed to the hazardous chemical Nu-Blast at her workstation.

101.    Ms. Maley filed a workers' compensation claim on Friday, November 12, 2021.

102.    After receiving medical treatment for her injury, Ms. Maley returned to the office and was harassed by Ms. Lewis regarding her workers' compensation claim and stated that she believed Ms. Maley had an agenda to file a lawsuit against Defendant.

103.    To allow a Pennsylvania employer to terminate a Pennsylvania employee based solely upon their invocation of their workers' compensation rights is a clear threat to the public policies articulated within the Workers' Compensation Act.

104.    Thus, the public policies embodied within the Workers' Compensation Act are sufficient to overcome the at-will employment doctrine.

105.    Defendant pretextually terminated Ms. Maley without adequate justification on December 6, 2021.

106.    Ms. Maley was terminated in retaliation for the invocation of her workers' compensation rights following her workplace injury, therefore her termination was wrongful and specifically prohibited by statute.

107.    As set forth hereinabove, the Defendant's actions were intentional, knowing, wanton, willful, and so outrageous as to shock the conscience.

108.    As a direct and proximate cause of the aforementioned conduct, Ms. Maley suffered actual damages, including, but not limited to, lost wages and benefits, emotional distress, anxiety and inconvenience damages, all in the past, present and future.

WHEREFORE, Ms. Maley hereby requests this Honorable Court enter judgment in her favor and against Defendant, including an award for back pay, front pay, compensatory damages, punitive damages, costs of suit, in addition to such other relief as deemed just and proper.

<u>COUNT IV</u>
**DEPRIVATION OF EARNED WAGES IN VIOLATION OF THE WPCL**

109.    Ms. Maley incorporates the allegations contained in the paragraphs, above, as if fully set forth at length herein.

110.    Under the WPCL, the definition of employer "includes every person, firm, partnership, association, corporation, receiver or other officer of a court of this Commonwealth and any agent or officer of any of the above-mentioned classes employing any person in this Commonwealth." 43 P.S. §260.2a.

111.    The Pennsylvania WPCL, 43 P.S. §260.1 *et seq.*, however, does not provide "a statutory definition of the term 'employee'." *Frank Burns, Inc. v. Interdigital Communs. Corp.*, 704 A.2d 678, 680-81 (Pa Super. 1997).

112.    Courts in Pennsylvania have held that "any person in Pennsylvania can qualify as an employee under the WPCL," because "grammatically, an 'employee' is an entity that is employed," and "in the definition of employer, the entity employed by the employer, i.e., the employee, is any person in Pennsylvania." *Frank Burns v. Interdigital Communs. Corp.*, at 681.

113.    Pennsylvania courts have thus narrowed the definition of employee accordingly: "those who work in Pennsylvania can sue under the Pennsylvania statute, but those who do not work in Pennsylvania cannot." Id. (citing *Killian v. McCulloch*, 873 F. Supp. 938, 942 (E.D. Pa. 1995)).

114.    Defendant qualifies as "an employer" within the definition of the WPCL, 43 Pa. C.S. §260.1a.

115.    Ms. Maley, based on the law cited above, was an employee working within the Commonwealth of Pennsylvania.

116.    "Every employer shall pay all wages, other than fringe benefits and wage supplements, due to his employees on regular paydays designated in advance by the employer…All wages, other than fringe benefits and wage supplements, earned in any pay period shall be due and payable within the number of days after the expiration of said pay period as provided in a written contract of employment or, if not so specified, within the standard time lapse customary in the trade or within 15 days from the end of such pay period." 43 Pa. C.S. § 260.3.

117.    Defendant failed to give Ms. Maley her paycheck for hours worked that was to be issued on November 12, 2021.

118.    Despite Ms. Maley's continuous requests for her paycheck, Defendant intentionally withheld the paycheck until December 1, 2021.

119.    Further, Ms. Maley was harassed for requesting her paycheck upon her return to work on December 1, 2021.

120.    Additionally, Defendant altered the payroll software to state that Ms. Maley had no accrued vacation time, despite the fact that employees accrue 40 hours at the date of hire.

121.    As set forth hereinabove, the Defendant's actions were intentional, knowing, wanton, willful, and so outrageous as to shock the conscience.

122.    As a direct and proximate result of the aforementioned conduct, Ms. Maley suffered actual damages, including, but not limited to, lost wages and emotional distress in the past, present and future.

WHEREFORE, Ms. Maley hereby requests this Honorable Court enter judgment in his favor and against Defendant, including an award for back pay, front pay, compensatory damages, liquidated damages, costs and attorney fees, in addition to such other relief as deemed just and proper.

<u>**COUNT V**</u>
**RETALIATION FOR SPEAKING ON A MATTER OF PUBLIC CONCERN IN VIOLATION OF 42 U.S.C. §1983 AND THE FIRST AMENDMENT OF THE UNITED STATES CONSTITUTION**

**(Plaintiff vs. Defendants, *jointly and severally*)**

123.    Ms. Maley incorporates the allegations contained in the paragraphs, above, as if fully set forth at length herein.

124.    The Third Circuit has developed a three-prong inquiry to determine if the First Amendment protects a public employee's speech: "(1) whether the employee spoke as a citizen; (2) whether the statement involved a matter of public concern; and (3) whether the government employer nevertheless had 'an adequate justification for treating the employee differently from any other member of the general public' based on its needs as an employer." *Baloga*, 927 F.3d at 753 (quoting *Palardy v. Twp. of Millburn*, 906 F.3d 76, 81 (3d Cir. 2018)).

125.    Defendant terminated Ms. Maley's employment because she spoke as a citizen on a matter of public concern in violation of Plaintiff's rights to speak freely and to petition the government for redress of grievances violation of her rights to speak freely and to petition for the redress of grievances under the First and Fourteenth Amendment of the U.S. Constitution and 42 U.S.C. § 1983.

126.    Defendant is subject to the OSH Act's General Duty Clause and is required to provide a safe environment to its employees.

127.    Defendant did not provide a safe environment for its employees by failing to enact adequate safety measures by failing to provide information or warning to Ms. Maley regarding the spraying of hazardous chemicals in her work area.

128.    Defendant and Mr. Nester were notified by Ms. Maley that safety protocols were not being observed.

129.    Instead of subjecting herself to dangerous working conditions, Ms. Maley reported her concerns to her employer, and then to the Occupational Safety and Health Administration.

130.    Mr. Nester, as superintendent, exercised control over the staffing and compliance with state laws.

131.    Mr. Nester, at all times relevant hereto, acted under color of state law, inasmuch as his acting constituted a misuse of power possessed solely by virtue of state law and made possible only because Mr. Nester is and was clothed with the authority of state law.

132.    Ms. Maley, as a citizen, has a right to speak on matters of public concern under the First and Fourteenth Amendments of the United States Constitution.

133.    As set forth above, Ms. Maley was acting as a citizen both speaking upon matters of public concern and petitioning for redress of grievances, therefore, her speech and the action of petitioning are protected under the First and Fourteenth Amendment of the United States Constitution.

134.    Ms. Maley, as a citizen of the United States, did not surrender her rights and privileges under the United States Constitution as a condition of employment with Defendant.

135.    As described above, Mr. Nester fired Ms. Maley in retaliation for her exercise of her First and Fourteenth Amendment right to speak on matters of public concern and to petition for redress of grievances.

136.    Defendants' actions were knowing, intentional, reckless, and done with conscious indifference to Ms. Maley's federally protected right to exercise her First Amendment rights.

137.    The conduct by Mr. Nester, as set forth above, was a conscious choice on the part of Defendants to disregard Ms. Maley's constitutional rights and deprived Ms. Maley under color

of state law, rights of speech, and petition under the First and Fourteenth Amendments of the U.S. Constitution in violation of 42 U.S.C. § 1983.

138.    As a direct and proximate result of the above-mentioned breach, Ms. Maley suffered actual damages, loss of income, lost wages, emotional distress, annoyance and embarrassment.

139.    Ms. Maley is seeking injunctive relief as set forth herein.

WHEREFORE, Ms. Maley hereby requests this Honorable Court consider the above and grant relief in his favor as follows:

a.    That Defendants in their official capacity be permanently enjoined from discriminating against Plaintiff for engaging in First Amendment Activities;

b.    That Defendants in their official capacity be permanently enjoined from retaliating against Plaintiff because he engaged in First Amendment protected activities;

c.    That Defendants in their official capacity, be ordered to reinstate Plaintiff to the position he occupied at the time he was terminated;

d.    That Defendants in their official capacity, be ordered to pay Plaintiff all her lost pay and benefits;

e.    That Plaintiff be awarded against Defendants her compensatory damages to compensate for pain, suffering, emotional distress and humiliation;

f.    That Plaintiff be awarded punitive damages against Defendants in an amount sufficient to punish Defendant and to deter similar conduct;

g.    That Plaintiff be awarded costs and attorney fees;

h.    That Plaintiff be awarded such other relief as deemed just and proper.

**JURY TRIAL DEMANDED.**

Respectfully Submitted,

**J.P. WARD & ASSOCIATES, LLC**

Date: May 31, 2022

By:_____

Joshua P. Ward (Pa. I.D. No. 320347)

J.P. Ward & Associates, LLC
The Rubicon Building
201 South Highland Avenue
Suite 201
Pittsburgh, PA 15206

Counsel for Plaintiff